Weaver, J.
(dissenting). I dissent from the majority’s conclusion that plaintiff’s collision with a timing shack at the end of ski racecourse is a danger that inheres in the sport of skiing, thus precluding recovery for plaintiff’s resulting injuries under Michigan’s Ski Area Safety Act (SASA), MCL 408.321 et seq. I *36 would affirm the Court of Appeals decision that the sasa does not operate to bar plaintiffs negligence claim.
Further, I would conclude under Lugo v Ameritech Corp, Inc, 464 Mich 512; 629 NW2d 384 (2001), that there is a question of fact regarding whether the location of the shack created an unreasonable risk of severe harm despite the danger’s open and obvious nature. Therefore, I would also affirm the Court of Appeals decision that the circuit court properly denied defendant’s motion for summary disposition pursuant to the common-law open-and-obvious-dangers doctrine.
MCL 408.342(2) provides:
Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and then-components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.
It is undisputed that the timing shack was obvious. Plaintiff testified that he knew it was there. The question under the statute is whether the timing shack was a necessary danger.[1]
*37 The location of the shack is relevant to the question of the necessity of the danger posed because the statute reads that the dangers inherent in the sport of skiing include, not just the hazards themselves, but the danger of “injuries which can result from . . . collisions with” such hazards. MCL 408.342(2). This language makes the placement of the shack relevant when considering the necessity of dangers that are not expressly enumerated in the statute.
The deposition testimony, including that of plaintiffs coach and defendant’s general manager, reveals that the placement of the shack approximately eight to twenty feet from the finish line was not necessary. Testimony revealed that the shack was portable and that it could be located at other places on the hill, including at the top of the course.
Nevertheless, the majority concludes as a matter of law that the placement of the shack is a danger that inheres in the sport of skiing, because the timing equipment required protection from the elements. While I agree that timing equipment is necessary to ski racing, I do not agree as the majority implies that the danger of collision posed by the placement of a portable timing shack is analogous to the danger of collision posed by ski lift towers and snow-making and grooming equipment.
Ski lift towers are required to carry skiers up the hill and snow-making and grooming equipment must *38 be placed where snow and snow grooming is needed.[2] The placement of equipment related to these functions is a matter of necessity. By contrast, it was undisputed that the timing shack could be located anywhere on the hill. Therefore, I dissent from the majority’s conclusion that the timing shack in this case constitutes a necessary hazard under the SASA and would hold that the plaintiff’s negligence claim is not barred as a matter of law by this statute.
For this reason, it is necessary to address whether plaintiff’s negligence claim is barred by the common-law, premises-liability doctrine of open and obvious dangers. Any assertion that the common law of premises liability has no application following the enactment of the sasa is unfounded. The common law of premises liability remains “in force” at ski areas under Const 1963, art 3, § 7 because the sasa is not a strict-liability statute and because the sasa does not insulate ski areas from all potential liability.[3] The statute states that a skier assumes the risk of collision with dangers that inhere in the sport of skiing “insofar as the dangers are obvious and necessary.” MCL 408.342(2). Where, as here, a danger does not inhere in the sport of skiing because it is not necessary under MCL 408.342(2), the next inquiry is whether there is a duty at common law.[4]
*39 In Lugo, supra at 517, a majority of this Court addressed when a possessor of a premises is required to protect invitees from open and obvious dangers concluding that
with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly “special aspects” of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the “special aspect” of a condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.
The Lugo majority explained further that “only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.” Lugo, supra at 519.[5]
The defendant’s general manager testified that he had considered the potential of injury from a collision with the timing shack and that the padding protecting the front of the shack was intended to prevent injury. Other parts of the shack, including the comers, how *40 ever, were not padded. There was also evidence that the plaintiff “caught an edge” and that “catching an edge” can happen at any time, even to experienced skiers, requiring adequate distance to regain control.
Under Lugo’s articulation of the open-and-obvious doctrine, it must be determined whether the timing shack created a uniquely high likelihood of harm or of severe harm to a ski racer. In my view, the placement of the timing shack in close proximity to the finish line of a giant slalom racecourse, at the point when a racer’s momentum and exhaustion peak, raises a question of fact regarding whether the location of the timing shack created a uniquely high likelihood of severe harm. Ski racing demands speed. Speed carries with it increased risks, including the increased risk of collision. Under Lugo, the location of the timing shack is the “special aspect” that creates a question of fact regarding whether risk of severe harm was unreasonable despite the obviousness of the timing shack.
For these reasons, I would affirm the Court of Appeals decision that defendant’s motion for summary disposition was properly denied by the circuit court.

 The circuit court concluded that there was a genuine issue of material fact regarding whether the placement of the shack was necessary under MCL 408.342(2) stating:
However, you have, really, two things, both the placement of the shack and the necessity of the shack. And the parties are disputing whether the shack was necessary. Defendant says it was because the plaintiffs’ minor was participating in a race. Plaintiffs argue that *37 a timing shack is not one of the dangers set forth in the Act. Also, the shack could have been placed anywhere.
So, as I say, it’s placement and, you know, necessity. You might need a timing shack for a trial, to time the runs. But where are you going to put it?

 The statute requires that snow-making and snow-grooming equipment be “properly marked.”

 In other words, the sasa limits liability, but it does not eliminate liability.

 Certainly, a majority of this Court is at liberty to change the common law regarding open and obvious dangers should it be moved to do so. Gruskin v Fisher, 405 Mich 51, 66; 273 NW2d 893 (1979). The Legislature, on the other hand, is at liberty to enact a statute of more limited liability. See, e.g., Colo Rev Stat 33-44-107(8)(c) (“Under Colorado law, a skier assumes the risk of any injury to person or property resulting from any of *39 the inherent dangers and risks of skiing and may not recover from any ski area operator for any injury resulting from any of the inherent dangers and risks of skiing, including: Changing weather conditions; existing and changing snow conditions; bare spots; rocks; stumps; trees; collisions with natural objects, man-made objects, or other skiers; variations in terrain; and the failure of skiers to ski within their own abilities.”)

 I concurred only in the result in Lugo and wrote separately because I believed, as I continue to believe, that the Lugo majority introduced a new consideration in the determination whether a defect is unreasonably dangerous despite its obviousness, that being whether a defect created the “unreasonable risk of severe harm.” Lugo, supra at 544 (opinion by Weaver, J.).